# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **MICHAEL S. GORBEY,** | ) | |
| **Plaintiff,** | ) | **Civil Action No. 7:17cv00091** |
| | ) | |
| **v.** | ) | |
| | ) | **REPORT AND** |
| **Lt. J. BOWLES, et al.,** | ) | **RECOMMENDATION** |
| **Defendants.** | ) | |
| | ) | |

| | | |
|---|---|---|
| **MICHAEL S. GORBEY,** | ) | |
| **Plaintiff,** | ) | **Civil Action No. 7:17cv00192** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **Lt. AVERY, et al.,** | ) | |
| **Defendants.** | ) | |
| | ) | |

Michael S. Gorbey, ("Gorbey"), a federal inmate proceeding pro se, brings these civil rights actions against various Bureau of Prisons, ("BOP"), employees of the United States Penitentiary Lee, ("USP Lee"), pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 389 (1971). Because at least three of Gorbey's previous complaints have been dismissed with prejudice for failing to state a claim upon which relief may be granted, under 28 U.S.C. § 1915A(b)(1), Gorbey may not proceed with these actions unless he pays the filing fee or shows that he was under "imminent danger of serious physical injury." 28 U.S.C.A. § 1915(g) (West 2006). These matters are before the undersigned magistrate judge

-1-

by referral, pursuant to 28 U.S.C. § 636(b)(1)(B), to conduct an evidentiary hearing to determine if Gorbey was under imminent danger of serious physical injury at the time he filed each of these actions. *See Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003). Evidentiary hearings were conducted on September 8 and 26, 2017, with Gorbey participating by video conference. The undersigned now submits the following report, recommending that the court find that Gorbey was not under imminent danger of serious physical injury at the time that he filed each of these actions.

## *I. Facts*

By Complaint filed with the court on March 8, 2017,[1] in Case No. 7:17cv91, Gorbey alleged that the defendants were holding him in a special housing unit, ("SHU"), cell in deliberate indifference to certain unsanitary conditions in retaliation for his filing a prior lawsuit. (Case No. 7:17cv91, Docket Item No. 1.) The Complaint alleged that the defendants purposefully placed Gorbey in cell A-111 on February 28, 2017, with a malfunctioning toilet. The Complaint stated, in part:

> Every day the toilet has been backing up & overflowing flooding the cell with feces & dirty water while Gorbey is forced to

---

[1] Gorbey's Complaint and application to proceed in forma pauperis were received and docketed by the court on March 13, 2017. Pursuant to the "Prison-Mailbox Rule" described in *Houston v. Lack*, 487 U.S. 266, 275 (1988), however, these items were filed with the court when they were placed by the plaintiff in the USP Lee mail system for mailing to the court. According to the postmark on the envelope containing these items, they were mailed March 9, 2017. Since these documents were dated March 8, 2017, by Gorbey, these documents could not have been placed in the mail any earlier than March 8, 2017.

use his own towel & linen to [clean] it up & being forced to [breathe]
& walk in such conditions while staff [continue] to fail to pick up
trash (repeatedly for weeks)[.]

Gorbey has been sick, [losing] weight, feeling feverish &
[constantly] sleepy while [a bacterial] infection on his face, back &
arms returns and though he submitted sick-call slips of 3-2-17 and 3-
6-17.

(Complaint at 2-3.) At another point in his Complaint, Gorbey stated that the USP
Lee staff were picking up the trash from his SHU cell "every several days."
(Complaint at 2.) Gorbey also alleged that the delivery of his incoming mail was
being delayed and that his outgoing mail was being destroyed. (Complaint at 4.)

On March 20, 2017, Gorbey filed an Amended Complaint, (Docket Item No.
3), which also alleged that staff were refusing to pick up trash from Gorbey's cell.
The Amended Complaint stated, in part: "Being repeatedly kept in these conditions
around [feces and urine] has made Gorbey … sick & caused bacterial infections,
posing a threat to his safety." (Amended Complaint at 3.) Gorbey also alleged that
he had been refused medical assessment for more than 12 days after he requested
to be placed on sick call, clean laundry had been provided on only two occasions
during the previous 30-day period, and the ventilation system was either blowing
cold air or not blowing any air. He also alleged that none of his personal mail was
getting through and that almost all of his legal mail was tampered with.

By Complaint filed with the court on April 23, 2017,[2] in Case No.
7:17cv192, Gorbey alleged that the defendants were deliberately indifferent to the

---

[2] Gorbey's Complaint and application to proceed in forma pauperis were received and
docketed by the court on May 2, 2017. According to the postmark on the envelope containing

threat to his safety by being placed in a cell with a hostile, violent offender "for several months." (Case No. 7:17cv192, Docket Item No. 1 at 2.) Gorbey also complained that the defendants had held him in administrative detention for an unreasonable period of time and that they were delaying or tampering with his mail.

At the September 8 evidentiary hearing, Gorbey testified that he placed his Complaint in Case No. 7:17cv91 in the USP Lee institutional mail to be mailed to the court on March 8, 2017. He said that he placed an Amended Complaint in the USP Lee institutional mail to be mailed to the court on March 14, 2017. He said that when he mailed his Complaint in this case, he was being held in cell A-111 at USP Lee. He said the ventilation in this cell had been cut off for "a while." He said that everything in his cell was "sweating," and "nothing" was dry. He testified that the cell was soaking wet and that even his clothes and towels were mildewing from the dampness. He said that trash had been sitting in his cell for three to five days without being picked up. He said the toilet was broken and that he told the staff that the toilet in the cell was broken before they moved him into the cell on March 4, 2017.

Gorbey testified that the toilet in cell A-111 overflowed on the morning of March 8, 2017. He said that the toilet overflowing was an everyday occurrence. He said that the toilet was flushed from outside of the cell. He said officers would hit the flush button, and the toilet would clog and not flush; the officers would hit

---

these items, they were mailed April 25, 2017. Since these documents were dated April 23, 2017, by Gorbey, these documents could not have been placed in the mail any earlier than April 23, 2017.

the flush button again, and the toilet would overflow.  He said that, on the morning of March 8, 2017, officers came by cell A-111 and picked up the trash. He said they pushed the toilet flush button and watched as the toilet overflowed.  Gorbey said that he did not know the names of the officers who did this, but he had obtained their names later, but could not remember them.  He claimed that one of the officers came back later and threatened him to not file any complaint about his actions.

Gorbey said that Lt. Bowles came by and saw that the toilet in his cell had overflowed, and Gorbey told him that he was going to file a lawsuit.  He said that Bowles refused to give him a plunger and said, "you can include the plunger" in your lawsuit. Gorbey admitted that his cell door had a space at the bottom, which would allow the water from an overflowing toilet to run outside of the cell.

Immediately after testifying that the officers had picked up the trash earlier in the morning of March 8, Gorbey then testified that the trash was piled "three feet high" on the cell floor that morning because, he said, it had been a couple of days since anyone had picked up the trash.  Gorbey later testified that, prior to the morning of March 8, 2017, the trash had not been collected from his cell since March 4.

Gorbey testified that he was moved from cell A-111 on March 9, 2017.  He said that when he placed his Amended Complaint in the mail on March 15, 2017, he was being housed in cell B-205.  Gorbey testified that the conditions in cell B-205 were the same as in cell A-111, with a malfunctioning toilet and no ventilation.  In fact, Gorbey testified that the toilet in cell B-205 overflowed on the

morning of March 15 before he mailed his Amended Complaint. Gorbey said, "Just because it didn't kill me doesn't mean I wasn't under an imminent danger."

Gorbey said that dirty laundry was picked up in the SHU at USP Lee an average of once a week, and it was not returned for four to five days later. Gorbey also testified that he had repeatedly requested to see Medical because he was sick and was suffering from a rash all over his body. Gorbey admitted that he filed his first sick call request on February 28, 2017, while being housed in cell A-112. He said that he also filed requests on March 2, 6, 8 and 13, 2017. Gorbey said that on March 6, 8 and 13 he requested to be seen by the medical staff for his rash and a lung infection. He said that he was not seen by Medical until March 29, 2017.

Gorbey testified that when he saw Medical on March 29, 2017, he was suffering from a fever, had been losing weight, and he had a lung infection and a rash. Gorbey said that, by the time he saw Medical, the rash on his arms had gone away, but he still had the rash on his back. He claims that these rashes started when he was moved into cell A-112. Before this, he testified, he only had rashes on his face, which had been diagnosed as dermatitis. Gorbey said that he was given an antibiotic for his lung infection, but his rash was never treated.

Gorbey also testified that the fact that his legal mail was being tampered with placed him in imminent danger. He said that it allowed prison officials to know what he had filed in his cases, and it had resulted in delays in his incoming and outgoing legal mail. Gorbey said the delays in the mail interfered with his ability to utilize the prison's administrative remedies.

Gorbey said USP Lee was on lockdown on March 8 and, because of this, trash was not being picked up from the cell, and inmate laundry was not being done on a regular basis. He said that he had to wear the same clothes for days.

Gorbey testified that he placed his Complaint in Case No. 7:17cv192 in the USP Lee institutional mail on April 23, 2017, while he was housed in cell B-205. He said that, later that night, he was moved away from his cellmate to cell B-204. Gorbey testified that when he filed this Complaint, he was being housed in cell B-205 with a violent Puerto Rican gang member who did not speak English, who was serving time for murder and who did not want to be housed in a cell with Gorbey. Gorbey said that his cellmate made a verbal request to Lt. Salcito to be moved out of the cell with Gorbey, but prison staff did not move him. Gorbey said that he also asked Lt. Salcito to move either him or his cellmate. Gorbey said that he made the request because his cellmate was "becoming hostile." He said his cellmate was trying to "push his way around the cell" and was "being threatful and wanting to fight."

Gorbey testified that he submitted a request form to Lt. Avery on April 18, 2017, asking to be moved. He said that he submitted a second request form on April 19, 2017, to Avery and Salcito asking to be moved. He said that he spoke with Salcito on April 19 or 20 and told him that his cellmate did not want him in the cell. Gorbey said that, on April 20, 2017, he submitted a request form saying that his cellmate had kicked him, and he threatened to file suit if he was not moved. He said that, on April 23, 2017, he submitted another request to be moved because his cellmate was kicking and punching at him and trying to start a fight.

Gorbey said that Lt. Pratt came to his cell on April 23, and he asked him about his request to be moved. He said that Pratt said that he gave the request to "No. 1" to deal with it. Gorbey said that he had no idea who Pratt was referring to when he said "No. 1." Gorbey said that he believes that he and his cellmate were deliberately left in the cell together in an effort to get Gorbey in trouble for fighting. Gorbey said that, later on April 23, 2017, he was standing near the sink in the cell when his cellmate pushed him into the table. He said that he mailed his Complaint to the court later that night.

Despite testifying earlier that he was moved to another cell away from his cellmate, Gorbey later testified that his cellmate was removed from his cell on the next day, April 24, 2017. Gorbey also said that he submitted a sick call request on April 24, but he did not see Medical. He said that he submitted another sick call request the next day, April 25, and a nurse, Karen Pease, came and looked at his side. He said that he did not want to talk to the nurse about what had happened to him at his cell door. Gorbey said that if he reported another inmate hurting him and other inmates heard him, he would be considered a "rat" and be in imminent danger. He said that it was not correct that he had not reported any symptoms to the nurse on April 25. He said that he told the nurse that he did not want to talk to her about his injury at his cell door. He claimed that the nurse did not examine him. Gorbey said that he never received any additional medical treatment while housed at USP Lee.

On cross-examination, Gorbey testified that he had copies of his sick call requests because he had used carbon paper to make copies of the requests. Gorbey also said that he had filed numerous administrative remedies requests based on a

failure of USP Lee staff to provide him with medical care. He said that none of his requests for medical treatment for his bacterial infection was ever answered.

On redirect, Gorby testified that Defense Exhibit Nos. 3 and 4 showed that the officials at USP Lee were deliberately moving him into cells with broken toilets because it shows that he was moved more often than the usual 21-day cell rotation.

Special Agent Jimmy Baker also testified at Gorbey's hearings. Baker said that, as the agent over the Special Investigations Unit at USP Lee, he made weekly rounds in the SHU. Baker also testified that SHU officers, case managers, unit managers and duty officers all would do rounds routinely through the SHU. He said that, if Gorbey had notified any of these persons that he was having trouble with his cell's toilet, it could have been remedied. Baker said that trash is routinely picked up in the SHU after every meal. He said that he was not aware of any complaints concerning feces in the cells, rotting food or smelly trash, and he never saw any such conditions in cell A-111 or any other cell in the SHU.

Baker said that Defense Exhibit No. 1 was Gorbey's Special Housing Unit Record, or form 292. (Case No. 7:17cv91, Docket Item No. 58-1; Case No. 7:17cv192, Docket Item No. 45-1.) He said that these forms indicated whether Gorbey had meals, showers, recreation or other time outside of his cell each day. For instance, Baker said that the forms indicated that Gorbey refused recreation on February 27 and 28 and March 2, March 5, March 14-16, March 19-20 and March 23. He said the form also indicated which nurse made rounds in the SHU on each day. Baker said that Defense Exhibit No. 2 was the Special Housing Unit Record,

or 292 form, for Gorbey's cellmate.  (Case No. 7:17cv91, Docket Item No. 58-2;
Case No. 7:17cv192, Docket Item No. 45-2.)

Baker said that he had no knowledge that Gorbey had any complaints about
being in a cell with a hostile cellmate in April 2017.  He said that he had never
received any information that would cause him to do a threat assessment of a threat
posed to Gorbey by the cellmate.  He said that he was aware that Gorbey was now
claiming that his cellmate had kicked or shoved him, but he said that Gorbey never
reported it at the time or it did not happen.  Baker said he had no knowledge of
Gorbey ever filing a BP-9 form with regard to a complaint about a hostile cellmate,
and, if he had, it would have been forwarded to Baker's attention.  He also said that
Gorbey had ample opportunity to speak to anyone who did rounds in the SHU,
including the Warden himself.

Baker did agree that, if the prison was on lockdown, no one was offered
recreation. He said that, in his experience, SHU inmates typically refuse recreation.
He also testified that all SHU inmates are served meals in their cells.

Lieutenant Alfredo "Freddie" Salcito also testified at Gorbey's hearing.
Salcito said that he worked in the SHU at USP Lee while Gorbey was housed
there.  He said that he was not aware of any problem with the toilets flooding in the
SHU at USP Lee. Salcito said that he was one of only a few correctional officers
who spoke Spanish at USP Lee, and he would regularly communicate with
Gorbey's Puerto Rican cellmate when they were housed together in the SHU.
Salcito said that Gorbey's cellmate did request to be moved into a cell with another
Puerto Rican inmate. Salcito said that Gorbey's cellmate was in the SHU in

protective custody, not for disciplinary reasons. Salcito said Gorbey's cellmate posed no threat to Gorbey. Salcito testified that, based on his recollection, Gorbey and this Puerto Rican inmate were housed together from February 4 to April 24, 2017, in cell 211.

Salcito said that he spoke with Gorbey while he was in the cell with this inmate, and Gorbey never gave him any indication that there were any hostilities between the two. He said that Gorbey told him that his cellmate wanted to be moved into a cell with another inmate from Puerto Rico. He said that he never knew that the cellmate had kicked or shoved Gorbey. Salcito said that he did not know why Gorbey's cellmate was moved out of the cell on April 25. He said that he did not recall ever receiving anything from Gorbey in writing complaining about this cellmate. He said that he got the impression that Gorbey wanted his cellmate moved so that he would have a cell by himself for a period of time.

Salcito said that he did remember a time when Gorbey asked for a plunger, and he gave him a plunger. Salcito said that he flushed the toilet, and it did not overflow.  He said that he had walked by and seen cell toilets overflow.  He said that, when that happened, the officers would give the inmate a plunger and then move the inmate to a cell with a working toilet until maintenance could fix the toilet.

Salcito testified that Defense Exhibit No. 3 was Gorbey's Inmate Quarters History. (Case No. 7:17cv91, Docket Item No. 58-3; Case No. 7:17cv192, Docket Item No. 45-3.) He said that Defense Exhibit No. 4 was the Inmate Quarters History of the cellmate that Gorbey claims posed a danger to him. (Case No.

7:17cv91, Docket Item No. 58-4; Case No. 7:17cv192, Docket Item No. 45-4.) Salcito said that these records showed that Gorbey and this cellmate were housed in the same cells from February 4 to April 24, 2017.

Gorbey's Inmate Quarters History shows that he was housed in cell 111 from March 4 to March 9, 2017, in cell 205 from March 9 to March 15, 2017, in cell 204 from March 15 to April 2, 2017, in cell 205 from April 2 to April 16, 2017, in cell 212 from April 16 to April 20, 2017, and in cell 209 from April 20 to May 8, 2017. (Case No. 7:17cv91, Docket Item No. 58-3; Case No. 7:17cv192, Docket Item No. 45-3.)  His cellmate's Inmate Quarters History shows that he was housed in cell 111 from March 4 to March 9, 2017, in cell 205 from March 9 to March 15, 2017, in cell 204 from March 15 to April 2, 2017, in cell 205 from April 2 to April 16, 2017, in cell 212 from April 16 to April 20, 2017, and in cell 209 from April 20 to April 24, 2017. (Case No. 7:17cv91, Docket Item No. 58-4; Case No. 7:17cv192, Docket Item No. 45-4.) According to this inmate's history, he was moved to cell 217 on April 24, 2017.

Ron Sillmon, the USP Lee General Foreman, testified that he was a supervisor in the Maintenance Department. Sillmon said that 70 to 80 percent of his work was performed in the SHU at USP Lee.  Sillmon said that he was in and out of the SHU at USP Lee in February and March 2017 when Gorbey claimed the toilets were overflowing. Sillmon said that he never saw any feces or any rotten trash in Gorbey's cell.  He said that if a toilet had broken, he would have received a work order to repair it.  He also said that he never received any report of waste in Gorbey's cell. Sillmon said that he remembers that Gorbey was moved from cell 111 on March 9, 2017. He said that he saw the cell that day and that it was in

-12-

habitable shape with no feces, no water and no trash on the floor. Sillmon said that he did repair a broken toilet in cell 112 around that period of time.

Sillmon said that there had been times at USP Lee when the ventilation system was not working. He said that when maintenance was notified of the problem, it was remedied. He said that he had never received a request to remedy any problem with the ventilation in the SHU. He also said that, when the prison's ventilation system was not working, the cells did not "sweat."

Nurse Herrell, a family nurse practitioner, testified that the nurses at USP Lee do sick call rounds in the SHU each morning. She said she did weekly rounds in the SHU and would see inmates for sick call in the SHU on occasion. She also testified that the Health Services Administrator and the Assistant Health Services Administrator each did weekly rounds in the SHU at USP Lee. Herrell testified that Defense Exhibit No. 6 was a copy of Gorbey's USP Lee medical records. (Case No. 7:17cv91, Docket Item No. 58-5; Case No. 7:17cv192, Docket Item No. 45-5.) These records contain a note from an April 25, 2017, encounter between Gorbey and USP Lee Nurse Karen Pease. Under the assessment section, this note states:

> No Significant Findings/No Apparent Distress
> Received sick call request from inmate stating his cellie pushed him into the … cell and damaged his left side and ribs. Inmate was assessed, no bruising, swelling or deformity was noted.

(Case No. 7:17cv91, Docket Item No. 58-5 at 1; Case No. 7:17cv192, Docket Item No. 45-5 at 1.)  Pease also noted that Gorbey stated that he did not want to talk about this incident with her.

Herrell also testified that these records also contain a report from an encounter she had with Gorbey on April 13, 2017. (Case No. 7:17cv91, Docket Item No. 58-5 at 3-6; Case No. 7:17cv192, Docket Item No. 45-5 at 3-6.) Herrell said, on this occasion, Gorbey did not mention any worries he had about a threat posed by his cellmate. The record of this encounter states that Gorbey complained of pain in his left foot, continuing sinus problems and an occasional dry cough. The record also states that Gorbey denied any chills, being easily tired, fever, night sweats, unexplained weight loss or weakness.  Herrell noted inflamed turbinates in Gorbey's nose and some erythema, or redness, in his pharynx, or throat. Herrell ordered x-rays of Gorbey's left foot and sinuses and prescribed amitriptyline for his chronic foot pain.

Herrell testified that she also examined Gorbey on March 29, 2017, in a medical room in the SHU to assess his complaints of a skin rash. (Case No. 7:17cv91, Docket Item No. 58-5 at 9-12; Case No. 7:17cv192, Docket Item No. 45-5 at 9-12.)  Herrell noted that Gorbey said that he had a "few raised bumps on back of my arms for a few days but they are gone now." She said that she could find no skin rash on Gorbey. On cross-examination, Herrell admitted that she probably did not look at Gorbey's back for any rash because he did not complain of a rash anywhere other than on his arms.

-14-

She noted that Gorbey was complaining of a cough with light yellow sputum and his nose running with clear discharge. He also complained of feeling like he had a fever. He denied any night sweats or weight loss. Herrell noted that Gorbey's temperature on this date was 97.3 degrees, and she noted some redness in his pharynx with sinus drainage. She also noted no skin rash on exam. Herrell prescribed amoxicillin. She testified that Gorbey made no complaint to her of any problem with the toilet in his cell overflowing or trash in his cell.

Herrell said that she has no memory of ever treating Gorbey for any type of bacterial infection on his skin. She did say that Gorbey had a medical history of suffering from dermatitis. In fact, Defense Exhibit No. 6 includes a February 15, 2017, note from Herrell stating that Gorbey requested an ointment to treat his seborrheic dermatitis. (Case No. 7:17cv91, Docket Item No. 58-5 at 13; Case No. 7:17cv192, Docket Item No. 45-5 at 13.) This exhibit also contains a note made by Herrell that Gorbey said that he had suffered from sinus problems and dermatitis before coming to USP Lee. (Case No. 7:17cv91, Docket Item No. 58-5 at 20; Case No. 7:17cv192, Docket Item No. 45-5 at 20.)

Herrell stated that she does not recall receiving any other sick call requests from Gorbey for the period from February 28 to March 29, 2017. She admitted that it was possible that he made sick call requests that never made it to her attention. She also admitted that, if Gorbey had suffered from a bacterial skin infection that went without treatment for a month or two, it could, possibly, be fatal. Herrell also testified, however, that she knew of no evidence of any serious risk of injury to Gorbey from a bacterial infection during the period of February 15 to March 29, 2017.

At the September 26, 2017, evidentiary hearing, USP Lee inmate, Billy Jack Earls, testified that he was housed at USP Lee with Gorbey. He said that in the SHU, inmates were not able to flush their own toilets. Because of this, he said that feces and urine sometimes sat in the toilet for a while before it was flushed by an officer on his next round through the unit. Earls testified that the toilets sometimes overflowed, and an inmate would have to wait at least one-half hour for an officer to make rounds to get cleaning supplies or a plunger. He also said that the ventilation system in the SHU did not work properly, and it caused the cells to sweat. He testified that, when the prison was on lockdown, the inmates' dirty laundry and trash did not get picked up. He said that, on occasion, trash would not be picked up for a couple of days. He said that the longest period he could remember going without trash pickup at USP Lee was three to four days. Earls stated that he did not remember the exact cell he was in on March 9, 2017, but he was housed in the SHU at USP Lee on the A range. He said that there were problems with the toilets and the trash being picked up while he was housed there. He also testified that he did not suffer any injury or any illness caused by these problems.

Inmate Robert William McCandles also testified that he had been held in the SHU at USP Lee, but he left USP Lee in January 2017. He said that, while he was housed in the SHU at USP Lee, there were no problems with the cell toilets. He also said that he did not remember the ventilation system not working properly. He said that he did remember that the trash was not picked up regularly. Because he left USP Lee in January 2017, he testified that he had no idea what the conditions in the SHU were like for Gorbey on March 9, 2017.

Jessica Babnew, the Drug Abuse Program Coordinator at USP Lee, also testified. Babnew said that she made at least weekly rounds at USP Lee. She said that she never saw any unsanitary conditions and that Gorbey never complained to her about any unsanitary conditions. She said that she did remember that there were complaints about the toilets not working, but she never received any complaints about trash not being picked up. She also said that she had no knowledge that the walls of the SHU cells would sweat.

On Gorbey's request, by Order entered September 26, 2017, the court ordered the Warden at USP Lee to provide the court with a copy of all administrative remedies forms filed by Gorbey between the dates of February 1 and May 31, 2017. (Case No. 7:17cv91, Docket Item No. 67; Case No. 7:17cv192, Docket Item No. 53.) The Warden responded by filing a Declaration of J. Phipps, Complex Captain, Federal Correctional Complex, Hazelton, W. Va.; Declaration of T. Taylor, Lieutenant, USP Lee; and Declaration of Sharon Wahl, Paralegal for the Beckley Consolidated Legal Center, Federal Correctional Institution, Beckley, W.Va., with copies of Gorbey's relevant administrative remedies records attached. (Case No. 7:17cv91, Docket Item No. 70; Case No. 7:17cv192, Docket Item No. 55.)

A review of Gorbey's administrative remedies records shows that he filed a Request For Administrative Remedy form, which was marked received on March 17, 2017, on which he wrote:

-17-

> I've been sick now for weeks & have some [bacterial] rash
> breakouts. I have sent medical some 4 sick call slips on 3-2-17, 3-6-
> 17, 3-8-17 and again 3-14-17 to no avail.
> I'm being denied medical treatment.
> I want immediate medical treatment.
> I am filing for civil damages as I do seek compensation.

(Case No. 7:17cv91, Docket Item No. 70-3 at 36; Case No. 7:17cv192, Docket

Item No. 55-3 at 36.)  It appears a designee of the Warden responded on March 30,

2017, in writing, which stated, in part:

> A review of this matter reveals, nurses make sick call rounds in
> the Special Housing Unit each morning. They go to each door for any
> sick call complaints or issues. They have not received any sick call
> requests from you. The Health Services Administrator makes rounds
> in the Special Housing Unit each week. She also goes to each door for
> any medical or sick call complaints. At this time you have not
> informed her of any sick call needs or complaints.  Due to our
> knowledge of your complaint, you have been added to the Nurse
> Practitioner's sick call list and will be seen.

(Case No. 7:17cv91, Docket Item No. 70-3 at 35; Case No. 7:17cv192, Docket

Item No. 55-3 at 35.)

Gorbey also filed a Request For Administrative Remedy form, which was

marked received on April 24, 2017, on which he wrote:

> USP Lee Lt. … Avery & Salcito are trying to encourage an
> assault or a fight. My celly personally told Salcito he wanted to move,
> & I told both Avery & Salcito & my celly has told other staff to no
> avail. While his attitude is [unacceptable]. Avery wants it to go to the
> extreme so he can let me get assaulted and or write me a fighting shot,

-18-

clearly setting me up. While he openly violates policy & the law. …
The 8th Amendment imposes a <u>duty</u> on prison staff to protect prisoners
from violence by other prisoners. … I want me or my celly moved. I
want Avery & Salcito sanction[ed] for trying to allow an assault or
fight. I want compensation for any damages.

(Case No. 7:17cv91, Docket Item No. 70-3 at 63; Case No. 7:17cv192, Docket
Item No. 55-3 at 63.)   The filings with the court also include a response to this
Request from the Warden of USP Lee dated May 21, 2017, which stated that, prior
to receiving the Request form, staff had no knowledge of any problem with your
cellmate. (Case No. 7:17cv91, Docket Item No. 70-3 at 62; Case No. 7:17cv192,
Docket Item No. 55-3 at 62.)   The response also noted that Gorbey's cellmate was
moved from the cell on April 24, 2017.

The Sentry Administrative Remedy Generalized Retrieval list also shows
that Gorbey filed an initial request for administrative remedy for a complaint of
officers refusing to take his trash or give him a plunger on March 10, 2017.  (Case
No. 7:17cv91, Docket Item No. 70-3 at 4; Case No. 7:17cv192, Docket Item No.
55-3 at 4.) A copy of that administrative remedy request is not contained in the
documents provided by the Warden.

Gorbey also has provided the court with copies of what he states are two of
the four sick call requests he filed in March. (Case No. 7:17cv91, Docket Item No.
78-1 at 3-4.)  One of these documents is dated March 2, 2017, and states:

(1) I have lung infection.
(2) I have rashes on my arms, back & other areas of my body.

I'm subject to bad or no [ventilation], damp cells, irregular laundry exchange, flooding toile[t]s, [feces], urin[e], & trash for unreasonable periods of time.
I need emergency medical treatment.

(Case No. 7:17cv91, Docket Item No. 78-1 at 4.) This request indicates that Gorbey was housed in cell A-112 on this date.

The other sick call request is dated March 8, 2017, and states:

(1) I'm deftly [sic] sick with lung infection & [fever].
(2) I have bad rashes on my arms, back & body
I need emergency medical treatment.
I been subject to [feces], urin[e], trash, wet cells[,] poor or no [ventilation].

(Case No. 7:17cv91, Docket Item No. 78-1 at 3.) This request indicates that Gorbey was housed in cell A-111 on this date.

Gorbey also has provided the court with copies of what he states are three written requests he made with regard to moving his cellmate. (Case No. 7:17cv91, Docket Item No. 78-1 at 5-7.) One of these requests is dated April 18, 2017, is addressed to Lt. Avery and stated:

My celly does not want to be in my cell any longer. He wants moved & is becoming hostile & may go to any extent to get moved. It is becoming a threat to my safety. Please move one of us.

-20-

(Case No. 7:17cv91, Docket Item No. 78-1 at 6.) This request indicates that Gorbey was housed in cell B-212 on this date.  Another of these requests is dated April 19, 2017, is addressed to Lt. Avery and Lt. Salcito, and stated:

> My celly is being hostile & assaultive. Today he kick[ed] me in my stomach area. He wants moved.
> I demand we be separated immediately.
> This is a threat to my safety given my celly's charges.

(Case No. 7:17cv91, Docket Item No. 78-1 at 7.) Another of these requests is dated April 20, 2017, is addressed to Lt. Avery and Salcito, and stated:

> I have repeatedly told you both that my celly is being hostile[,] assaultive & wants moved.
> I'm filing a BP8 & [Sensitive] 9 on you 2. Yesterday he kick[ed] me & … he may go to any extent to get moved.
> I demand to be sep[a]rated from this inmate immediately. …

(Case No. 7:17cv91, Docket Item No. 78-1 at 5.)


None of these sick leave or written requests indicates that it was ever received or reviewed by anyone at USP Lee.


## II. Analysis


As stated above, the court has determined that at least three of Gorbey's previous complaints have been dismissed with prejudice for failing to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1). Therefore, under the Prison Litigation Reform Act, ("PLRA"), Gorbey may not proceed with

these actions unless he pays the filing fee or shows that he was under "imminent danger of serious physical injury," 28 U.S.C.A. § 1915(g) (West 2006), at the time of filing.  To prove that he is under imminent danger of serious physical injury, an inmate must show that the

> "conduct complained of threatens continuing or future injury, not whether the inmate deserves a remedy for past misconduct." *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003). Vague, speculative, or conclusory allegations are insufficient to invoke the exception of §1915(g); rather, the inmate must make "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury." *Id.*

*Johnson v. Warner*, 200 F. App'x 270, 272 (4th Cir. 2006).

Based on the evidence before the court, I am persuaded that Gorbey was not under any imminent danger of serious physical injury at the time he filed his Complaint in Case No. 7:17cv91 on March 8, 2017. Gorbey alleged that he was being held in unsanitary conditions in cell A-111 at the time he filed his Complaint. In particular, Gorbey claims that he was being held in a cell with trash piled three feet high on the floor with feces and urine present in the cell from the overflowing toilet.  I find that the preponderance of the evidence presented proved otherwise.

Witnesses Baker, Herrell, Sillmon and Babnew all testified that they were routinely in the SHU and that they never saw any of the unsanitary conditions alleged by Gorbey.  In fact, Sillmon testified that he was present in cell A-111 after Gorbey was moved from that cell on March 9, 2017 – the day after Gorbey filed

his Complaint – and he said that cell A-111 was in habitable shape with no feces, water or trash on the floor. Of the two inmate witnesses called by Gorbey, one, McCandles, testified that there was no problem with the toilets in the USP Lee SHU cells when he was housed there prior to January 2017.  He also testified that he did not remember the ventilation system not working properly or any problems with the trash not being picked up. While the other inmate witness, Earls, testified that the SHU toilets sometimes overflowed, he also testified that the inmates only had to endure these conditions for up to a half-hour until the next officer made rounds to request a plunger and cleaning supplies.

With regard to Case No. 7:17cv192, I am persuaded that Gorbey has sufficiently shown that he was under an imminent danger of serious physical injury from his cellmate at the time he filed his Complaint on April 23, 2017. Gorbey testified that he felt threatened by his cellmate because he was a violent gang member convicted of murder. Gorbey testified that his cellmate became "hostile" toward him after USP Lee staff did not grant his cellmate's request to be moved from Gorbey's cell. Gorbey said that his cellmate tried to "push his way around the cell" and was "being threatful and wanting to fight."  Gorbey did not offer any testimony that his cellmate made any specific threats against him. Gorbey did testify, however, that his cellmate kicked him on or about April 19, punched at him on occasion and pushed him on April 23, causing him to hit his side on a table.

The documents provided from Gorbey's USP Lee administrative remedies file confirm that Gorbey filed both an informal complaint and a formal complaint on or about April 21, 2017, regarding the actions of his cellmate and the failure of staff to intervene. These documents contradict both Baker's and Salcito's

testimony that Gorbey never told anyone that his cellmate posed a threat to his safety. These documents also contradict Baker's testimony that Gorbey had filed no such written complaints. Also, Herrell testified and offered documentary evidence that Gorbey sought medical treatment on April 25, claiming that he had been pushed by his cellmate on April 23. I find that this evidence of escalating hostility between Gorbey and his cellmate, in conjunction with his cellmate's attempts to injure Gorbey, threatened continuing or future serious physical injury and proves that Gorbey faced an imminent danger of serious physical injury.

I do, however, recommend that Gorbey be granted in forma pauperis status in Case No. 7:17cv192 only as to his claim that the defendants were deliberately indifferent to the danger posed to him by his cellmate. At least one Circuit Court of Appeals has held that "there must be a nexus between the imminent danger a three-strikes prisoner alleges to obtain IFP status and the legal claims asserted in his complaint." *Pettus v. Morgenthau*, 554 F.3d 293, 297 (2nd Cir. 2009). The Second Circuit in *Pettus* held that this "nexus" is established when "the prisoner's complaint seek[s] to redress an imminent danger of serious physical injury and that this danger must be fairly traceable to a violation of law alleged in the complaint." 554 F.3d at 297.

The Fourth Circuit has held that "[t]he impetus behind the enactment of the PLRA was a concern about the 'endless flood of frivolous litigation' brought by inmates." *McLean v. United States*, 566 F.3d 391, 397 (4th Cir. 2009) (quoting 141 CONG. REC. S14,418 (1995). "'To accomplish its goal of reducing the number of frivolous lawsuits,' Congress imposed on prisoners, among other hurdles, the three-strikes limitation to proceeding in forma pauperis." *Blakely v. Wards*, 738

F.3d 607, 612-13 (4th Cir. 2013) (quoting *Green v. Young*, 454 F.3d 405, 406-07 (4th Cir. 2006)).  The undersigned is of the opinion that the legislative purpose of the PLRA cannot be achieved if the three-strikes limitation would allow an inmate to proceed in forma pauperis on *any* claim as long as he is under *any* imminent danger of serious physical injury.  In *Pettus*, the Second Circuit reasoned that "the imminent danger exception is designed to provide 'a safety valve for the "three strikes" rule.' … Its unmistakable purpose is to permit an indigent three-strikes prisoner to proceed IFP in order to obtain a judicial remedy *for an imminent danger*." 554 F.3d at 297 (citations omitted) (emphasis added). To hold otherwise, the *Pettus* court reasoned, "an indigent prisoner with a history of filing frivolous complaints could, by merely alleging an imminent danger, file an unlimited number of lawsuits, paying no filing fee, for anything from breach of a consumer warranty to antitrust conspiracy." 554 F.3d at 297. Based on this reasoning, I hold that that the imminent danger exception to the three-strike rule requires that the prisoner's complaint seeks to redress the imminent danger alleged.

I further note that Gorbey's Complaint in Case No. 7:17cv192, as well as his testimony, contained numerous allegations of constitutional violations by the defendants that posed no imminent danger of serious physical injury. These allegations included being held in administrative detention for an unreasonable period of time, denial of due process rights, problems with his legal mailings, being prescribed medication to prevent him from staying awake to mail his legal mailings, being denied indigent postage and writing materials for his legal mail and purposeful delays in completing inmate account statements for courts.

## PROPOSED FINDINGS OF FACTS AND
## CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Gorbey was not under an imminent danger of serious physical injury at the time he filed his Complaint in Case No. 7:17cv91;

2. Gorbey was under an imminent danger of serious physical injury at the time he filed his Complaint in Case No. 7:17cv192;

3. The court should deny Gorbey IFP status in Case No. 7:17cv91; and

4. The court should grant Gorbey IFP status in Case No. 7:17cv192 only insofar as his Complaint seeks to remedy the imminent danger he alleged to gain IFP status.

## RECOMMENDED DISPOSITION

For the reasons stated above, I recommend that the court find that Gorbey was not under imminent danger of serious physical injury and deny his application to proceed in forma pauperis in Case No. 7:17cv91. I also recommend that the court find that Gorbey was under an imminent danger of serious physical injury and grant his application to proceed in forma pauperis in Case No. 7:17cv192, but only as to his claim that the defendants were deliberately indifferent to the danger posed to him by his cellmate.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Jackson L. Kiser, Senior United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and unrepresented parties.

DATED: This 30th day of January, 2018.

/s/ *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE